J-S52039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON SLOAN | : | |
| | : | |
| Appellant | : | No. 933 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 19, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0000300-2016

BEFORE:   PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    Filed: January 21, 2021

Appellant Jason Sloan appeals from the Judgment of Sentence entered in the Court of Common Pleas of Delaware County on February 19, 2020, following a **Gagnon II**[1] revocation hearing at which time he was ordered to, *inter alia*, pay restitution in the total amount of $5,861.53 through monthly payments of forty ($40.00) dollars to Murphy Ford, 3310 Township Line Road in Chester, Delaware County, PA.  Following careful review, we vacate the probation revocation sentence and remand with instructions.

The trial court set forth the relevant facts and procedural history herein as follows:

> On August 14, 2015, Appellant was caught redhanded in the middle of the night committing criminal offenses at Murphy Ford, 3310 Township Line Road in Chester, Delaware County,

---

[*] Former Justice specially assigned to the Superior Court.
[1] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

Pennsylvania. As a result of his felonious conduct and criminal behavior, Appellant was arrested and charged with theft by unlawful taking, receiving stolen property, conspiracy, and various related charges. On February 23, 2016 Appellant entered into a negotiated guilty plea: Appellant plead guilty to 1) theft by unlawful taking (felony 3) and agreed to a sentence of confinement of time served to 23 months, 2) conspiracy to theft (felony 3) and agreed to a sentence of two years of probation concurrent with the theft conviction, and 3) criminal trespass (felony 3) and agreed to a sentence of two years of probation consecutive to the theft and conspiracy convictions. At the time of negotiated guilty plea, [Appellant] specifically agreed, *inter alia*, to pay to Murphy Ford restitution in the amount of $12,053.06 (joint and several with co-defendant).[2] *See* February 23,.2016 Notes of Testimony at pp. 4-5. On February 11, 2020 a *Gagnon II* hearing was held and continued to February 19, 2020 and Appellant was found in violation of his parole and probation and given a new sentence: for the theft by unlawful taking conviction Appellant was sentenced to full back time of 664 days with immediate parole; for the conspiracy conviction Appellant was sentenced two years of probation to run concurrently to the theft conviction; and for the criminal trespass conviction, Appellant was sentenced to two years of probation to run consecutively to the theft and conspiracy sentences. Additionally, [Appellant] was ordered, *inter alia*, to make monthly payments towards restitution in the amount of $40.00 per month. On February 24, 2020 Appellant filed a post sentence motion and on March 17, 2020 Appellant filed a Notice of Appeal. *See* Pa.R.Crim.P.708 concerning the procedures governing *Gagnon II* revocation hearings, motions to modify sentence, and appeals.

On April 22, 2020 an Order was entered directing Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) and on May 4, 2020 Appellant filed a 1925(b) Statement of Matters Complained of on Appeal[.]

_____

[1] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

---

[2] Appellant's codefendant is Erica Brown, Appellant's wife. The case against Ms. Brown was dropped in Chester District Court because she made a payment in the amount of Six Thousand ($6,000) Dollars. N.T. 2/11/20, at 5.

Trial Court Opinion, filed 7/13/20, at 1-3.

In his brief, Appellant presents the following question for this Court's review:

> Whether the restitution order is illegal, because the lower court did not have authority - under the version of 18 Pa. C.S. § 1106 in effect at the time of the alleged criminal conduct - to award restitution to a business entity?

Brief for Appellant at 5.

"Generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea." *Commonwealth v. Morrison*, 173 A.3d 286, 290 (Pa.Super. 2017). Appellant challenges the trial court's sentence following the revocation of his probation and parole. Upon revocation of probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentence, including incarceration. 42 Pa.C.S.A. § 9771(b). "[R]estitution may be imposed either as a direct sentence, 18 Pa.C.S.[A.] § 1106(a), or as a condition of probation, 42 Pa.C.S.[A.] § 9754." *Commonwealth v. Holmes*, 155 A.3d 69, 78 (Pa.Super. 2017) (*en banc*) (quoting *In re M.W.*, 725 A.2d 729, 732 (Pa. 1999)). When restitution is imposed as a direct sentence, "the injury to property or person for which restitution is ordered must directly result from the crime." *Id.* (quoting *In re M.W.*, 725 A.2d at 732). "Since an order of restitution is a sentence, whether it is imposed as a direct sentence or as a condition of probation or parole, it must be supported by the record."

*Commonwealth v. Hainsey*, 550 A.2d 207, 213 (Pa.Super. 1998) (quotation and internal citations omitted).

In addition, when considering challenges to the imposition of restitution, we have held:

> the appellate courts have drawn a distinction between those cases where the challenge is directed to the trial court's [statutory] authority to impose restitution and those cases where the challenge is premised upon a claim that the restitution order is excessive. When the court's authority to impose restitution is challenged, it concerns the legality of the sentence; however, when the challenge is based on excessiveness, it concerns the discretionary aspects of the sentence.

*Commonwealth v. Oree*, 911 A.2d 169, 173 (Pa.Super. 2006); *see also In re M.W.*, 725 A.2d 729, 731 (Pa. 1999) (holding that, when an issue "centers upon [the court's] statutory authority" to impose restitution, as opposed to the "court's exercise of discretion in fashioning" restitution, the issue implicates the legality of the sentence). *See also Commonwealth v. McCabe*, 230 A.3d 1199, 1203 (Pa.Super. 2020), *appeal granted on other grounds*, No. 226 MAL 2020, 2020 WL 5014921 (Pa. Aug. 25, 2020). We review a challenge to the legality of a sentence for an abuse of discretion and our standard of review is plenary. *Id.* As Appellant's challenges the trial court's statutory authority to award restitution to a business entity, his claim implicates the legality of his sentence. *See Oree*, 911 A.2d at 173.

Section 1106 of the Crimes Code was amended on October 24, 2018, and because "'the events that led to [a]ppellant's conviction occurred before October 24, 2018, [the since-repealed] version of the statute applies.'"

*Commonwealth v. Hunt*, 220 A.3d 582, 586 (Pa.Super. 2019) (quoting *Commonwealth v. Tanner*, 205 A.3d 388, 396 n. 7 (Pa.Super. 2019) (brackets in *Hunt*)). Prior to its amendment, Section 1106 read as follows: "Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor." 18 Pa.C.S.A. § 1106(a) (effective January 31, 2005). It also required that "[t]he court shall order full restitution ... regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss." *Id.* at § 1106(c)(1)(i) (effective January 31, 2005 to October 23, 2018).

Appellant relies upon *Hunt*, for the proposition that a sentencing court cannot award restitution to a business entity for alleged criminal conduct that occurred prior to October 24, 2018, because during that time business entities were not "direct victims" under 18 Pa.C.S.A. § 1106. Brief of Appellant at 10. Appellant reasons that, as a result, the restitution order imposed following Appellant's *Gagnon II* hearing, at which time Appellant's sole violation of supervision was his failure to satisfy the previously-imposed, illegal restitution, is also illegal. Brief of Appellant at 12.

In *Hunt*, as was the case herein, the trial court had imposed restitution as a part of the appellant's direct sentence, in accordance with 18 Pa.C.S.A. §

- 5 -

1106. The term "property," as used in Section 1106, meant "[a]ny real or personal property, including currency and negotiable instruments, **of the victim**." 18 Pa.C.S.A. § 1106(h) (emphasis added). Given that the term "property" referred to the personal property of "the victim," we must examine the definition of the term "victim" to determine whether the items Appellant took from Murphy Ford in this case can properly be the subject of a restitution order issued pursuant to Section 1106.

At the time of Appellant's crimes, Section 1106(h) declared that the definition of the term "victim" was: "[as that term is] defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929." 18 Pa.C.S.A. § 1106(h) (effective January 31, 2005 to October 23, 2018). Prior to its repeal, Section 479.1 defined the term "victim," in relevant part, as: "[a] person against whom a crime is being or has been perpetrated or attempted." *See Commonwealth v. Holmes*, 155 A.3d 69, 80 (Pa. Super. 2017) (*en banc*) (opinion in support of affirmance).

Nevertheless, as we have explained: "the definition of 'victim' set forth in the Administrative Code of 1929 was itself repealed in 1998, and the operative definition of the term 'victim' under the Crime Victims Act ('CVA') at 18 P.S. § 11.103 took its place." *Commonwealth v. Hunt*, 220 A.3d 582, 588-89 (Pa.Super. 2019). As is relevant to the case at bar, the CVA defines a "victim" as "[a] direct victim." 18 P.S. § 11.103. The CVA then defines a "direct victim" as: "[a]n individual against whom a crime has been committed

or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act." ***Id.***

In ***Hunt***, this Court held that the definition of "victim" in Section 479.1 of the Administrative Code of 1929 and Section 11.103 of the CVA are not "similar enough so as to render them interchangeable"—and, thus, the definition of "victim" in Section 479.1 of the Administrative Code of 1929 did not survive the 1998 repeal. ***Hunt***, 220 A.3d at 589; ***see also*** 18 P.S. § 11.5102 (declaring that the CVA "is a codification of the statutory provisions repealed in section 5103 and, except where clearly different from current law, shall be deemed to be a continuation of prior law"); 1 Pa.C.S.A. § 1962 ("[w]henever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation"). Therefore, in ***Hunt***, this Court held that "the definition of 'victim' under the CVA that entered force in 1998 is the sole definition for our purposes under § 1106." ***Hunt***, 220 A.3d at 590.

Herein, as the trial court recognizes, the restitution portion of Appellant's sentence clearly was part of the negotiated plea in 2016. ***See*** Trial Court Opinion, at 4. The trial court accepted Appellant's guilty plea and sentenced Appellant in accordance with the negotiated terms; yet, the only way in which the trial court had statutory authority to order Appellant to pay Murphy Ford, which the court recognizes is a "business entity" ***see*** Trial Court

Opinion, filed 7/13/20, at 4, restitution for the stolen property in 2016 is if the court had determined that Murphy Ford fell under the CVA's definition of the term "direct victim." However, in **Hunt**, this Court specifically held that "the definition of 'direct victim' under the CVA (and, consequently, the definition of 'victim' under the pre-amendment version of § 1106) does not include corporate entities." **Id.** at 591.

The trial court concludes Appellant's issue on appeal lacks merit and urges this court to affirm his judgment of sentence. In doing so, the court reasons that "[n]otwithstanding Appellant's argument the court did not have the authority under 18 Pa.C.S. § 1106 to sentence Appellant to pay restitution to Murphy Ford, for all the reasons stated above, the court imposed sentence in furtherance of, and in accordance and in conformity with the negotiated deal struck between the attorney for the Commonwealth and Appellant in 2016." Opinion at 6. However, Appellant and the Commonwealth entered into plea negotiations under the shared misapprehension that Appellant lawfully could be sentenced to pay restitution to Murphy Ford. This misapprehension "tainted the parties' negotiations at the outset." **See Commonwealth v. Melendez-Negron**, 123 A.3d 1087, 1094 (Pa.Super. 2015).

For this reason, we are not persuaded by the argument of both the trial court and the Commonwealth that because this matter arose from a negotiated plea agreement and Appellant failed to challenge his sentence in a

timely manner, his sentence is legal.  Importantly, this argument fails to recognize that Appellant's restitution claim implicates a legality of sentence issue. "While it is imperative to enforce a contract between two parties, it is also well-settled law that a contract with an illegal term is void and unenforceable. [I]llegality is a traditional, generally applicable contract defense.  Even in the civil context, an agreement that cannot be performed without violating a statute is illegal and will not be enforced." ***Commonwealth v. Tanner***, 205 A.3d 388, 399 (Pa.Super. 2019) (citations and quotation marks omitted; brackets in original).  Thus, we must now determine the impact that the illegality of the original sentence has on the probation revocation sentence being challenged here*.*

In ***Commonwealth v. Rivera***, 154 A.3d 370, 381 (Pa.Super. 2017) this Court observed "[o]ur cases clearly state that a criminal defendant cannot agree to an illegal sentence, so the fact that the illegality was a term of his plea bargain is of no legal significance." (citations omitted).  In addition, in ***Commonwealth v. Milhomme***, 35 A.3d 1219, 1222 (Pa.Super. 2011) this Court explained that where a trial court imposes an illegal sentence and later finds a defendant in violation of probation related to that sentence, the new sentence imposed following revocation of probation is also illegal. However, vacating the restitution portion of Appellant's sentence fundamentally strips the Commonwealth of the benefit of its bargain. Thus, we are constrained to vacate Appellant's guilty plea and return the case to its status prior to the

entry of Appellant's guilty plea. ***Commonwealth v. Melendez-Negron***, 123 A.3d 1087 (Pa. Super. 2015).

> In ***Melendez-Negron*** we explained:
>
> [B]oth parties to a negotiated plea agreement are entitled to receive the benefit of their bargain. ***See Commonwealth v. Townsend***, 693 A.2d 980, 983 (Pa. Super. 1997) ("[W]here the parties have reached a specific sentencing agreement ... the court cannot later modify the terms of the agreement without the consent of the Commonwealth" because "this would deny the Commonwealth the full benefit of the agreement which it reached ... and the defendant, in turn, would receive a windfall."); ***Commonwealth v. Coles***, 365 Pa.Super. 562, 530 A.2d 453 (1987) (holding that granting defendant's motion to modify negotiated plea sentence stripped Commonwealth of the benefit of its bargain).... Accordingly, we conclude that the shared misapprehension that the mandatory minimum sentence required by [42 Pa.C.S.A. § 9712.1] applied to Melendez–Negron tainted the parties' negotiations at the outset .... [T]he parties' negotiations began from an erroneous premise and therefore were fundamentally skewed from the beginning. Thus, while we affirm the PCRA court's order vacating Melendez–Negron's sentence, we further vacate his guilty plea and remand for further proceedings.

***Melendez–Negron***, 123 A.3d at 1093–94.

Therefore, consistent with all of the foregoing, we conclude that since the parties' negotiations began from the erroneous premise that Appellant could be sentenced to pay restitution to Murphy Ford, we are constrained to vacate Appellant's original February 23, 2016, sentence and his February 19, 2020, revocation sentence, and restore the case to its status prior to the entry of the plea for further proceedings and resentencing.

Judgment of sentence vacated. Guilty plea vacated. Case remanded for further proceedings and resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/21/21